SARA DREXLER, AS EXECUTRIX UNDER THE WILL OF MORRIS T. DREXLER, (ALSO KNOWN AS MORRIS DREXLER), DECEASED, PLAINTIFF, v. SEIBERT DREXLER, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided September 13, 1951.

*Mr. Sidney Cohn,* attorney for plaintiff.

*Messrs. Heller & Laiks,* attorneys for defendants Seibert Drexler and Rose Goldberg.

*Mr. I. Arthur Weiss,* attorney for defendants Kassel Richard Meyers, Leonard Drexler, Jeffrey Kassel Kroll and Fred Goldberg, and as guardian *ad litem.*

*Mr. Filbert L. Rosenstein,* attorney for defendant Barnert Hospital Association.

*Mr. Saul M. Mann,* attorney for defendants Y. M. H. A. and Y. W. H. A. of Paterson.

GRIMSHAW, J. S. C. This is an action seeking a construction of the will of Morris T. Drexler, who died a resident of the County of Passaic, on June 15, 1949. The plaintiff, Sara Drexler, is the widow of the decedent. The defendant executors, Seibert Drexler and Rose Goldberg, are children of the decedent by a former marriage. In his will, which was probated by the surrogate of the County of Passaic on December 26, 1949, the decedent, after directing the payment of his debts, made a number of specific and general bequests. The widow, in addition to receiving certain specific legacies, was bequeathed the residue of the estate, in the following terms:

"FORTY-FIFTH: All the rest, residue and remainder of my estate, of whatever nature it may consist, and wheresoever situate, which I may own at the time of my decease, I give, devise and bequeath to my beloved wife, SARA DREXLER, my beloved daughter, ROSE GOLD-BERG, my beloved son, SIEBERT DREXLER, IN TRUST NEVERTHELESS for the following uses and purposes:

a. To pay the net income therefrom in suitable installments to my beloved wife, for her lifetime, together with such additional sum or sums from the *corpus* thereof as she may from time to time request in writing, not exceeding Five (5%) Percent per annum of the net inventoried value of the residue of my estate after all deductions.

b. Should, however, any emergency arise during the life of my beloved wife, whereby her comfort and general welfare requires a further payment than the Five (5%) Percent per annum of the *corpus* of my estate, as hereinabove provided, said Trustees, in the exercise of their mutual discretion, or in the discretion of two of my said Trustees, and upon the written request of my wife, shall have the right to withdraw such further sum or sums from the *corpus* of my estate, and pay the same over to her to relieve her necessitous condition. Said payment is not to be made, however, unless at least two Trustees agree upon the necessity therefor."

And then appear expressions of the decedent's intent, as follows:

"FORTY-NINTH: This Will has been carefully planned by me, and it is my deliberate judgment that all of its provisions are wise and just and that the plan as a whole will prove beneficial and satisfactory to my beloved wife. It is therefore my desire that my wife assent to this Will and cooperate with its plan which I am confident will work to her best advantage and welfare. In this regard I wish to assure my beloved wife that my only thought in life has been for her welfare and protection, as I wish to make absolutely certain that throughout her life she will never be dependent upon others for support and maintenance."

"FIFTY-FIRST: I further state that my main object throughout this Will has been to protect my wife against want or privation during the remainder of her days, and should, by reason of any unforeseen contingency, my total net estate be insufficient to provide for her as in accordance with my desires, and make payment of the specific bequests hereinabove detailed, then my Executors and Trustees are hereby granted the power to forego the payment of any such bequests for such period of time as they in their mutual judgment, or two of them, shall deem fitting and proper, their discretion in that regard being final and conclusive."

The estate totals $20,000. The general legacies amount to $30,000. Obviously, if the general legacies are paid at this time, there will be no residuary estate. The defendant executors have expressed their determination to pay the specific and general legacies and by this action the plaintiff seeks to restrain such payment.

In the pretrial order the following questions were posed for the court's determination:

"1. The first issue is whether under the terms of the will it was the intent of the testator that the widow should take ahead of the specific legatees.

2. Assuming the answer to the first issue to be in the affirmative, may the executors disregard the intent of the testator in view of the fifty-first paragraph of the will."

Ordinarily the residue of an estate is the amount remaining after the payment of the debts, legacies, expenses of administration and other proper charges. *Berger v. Burnett*, 95 *N. J. Eq.* 643 (*E. & A.* 1923). But it is a substantive canon of construction that effect be given, if possible, to all provisions of the will, if not in conflict with each other or

with the general intention revealed by the instrument as an entirety. *In re Fox's Estate,* 4 *N. J.* 587 (1950). Of course, in seeking the intent of the testator the court must gather that intent from the language used in the will and may neither indulge in surmise nor re-write the will. *McDonald v. Clermont,* 107 *N. J. Eq.* 585 (*E. & A.* 1930). But if the rules of construction are in conflict with the expressed intent of the testator, the rules of construction must give way. *In re Fisler's Estate,* 133 *N. J. Eq.* 421 (*E. & A.* 1942); *Marx v. Rice,* 1 *N. J.* 574 (1949).

█ After reading the will, one must be impressed by the decedent's concern for the welfare of his wife. He repeatedly expressed his determination that she should be protected from want. Everything else is subordinated to the accomplishment of that desire. In the "Fifty-first" paragraph of his will, the testator, anticipating the possibility, now a certainty, that the estate would not be sufficient to provide for his widow and also for the general legacies, clothed his executors with authority to forego payment of the general legacies so that they might be in a position to provide the widow with adequate support. This provision of the will, it seems to me, is a clear mandate to the executors to withhold payment of the legacies so long as there is doubt as to the ability of the estate to provide adequately for the widow. Obviously that doubt cannot be resolved during the widow's lifetime.

The defendant executors, who are also general legatees, contend that the discretion vested in them by the "Fifty-first" paragraph of the will, authorizes them to pay the general legacies, regardless of the effect upon the interest of the widow. If that contention is sound, the "Fifty-first" paragraph of the will would be meaningless. It would do violence to the clearly expressed intention of the testator.

█ I am of the opinion that the testator intended that his estate should remain intact during the lifetime of his widow. Only thus could she be assured of protection from want. A payment of the legacies at this time would completely defeat the intention of the testator.

I am also of the opinion that the provisions in the will for the benefit of the widow take precedence over the general legacies. The "Fifty-first" paragraph of the will does not provide justification for a payment of the general legacies at this time.

Judgment accordingly.